**MALAMUT & ASSOCIATES, LLC**
Mark R. Natale -      071292014
457 Haddonfield Road Suite 500
Cherry Hill, NJ 08002
856-424-1808
856-424-2032 (f)
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **LISA NINTZE** | : | |
| | : | |
| | : | |
| | : | |
| **Plaintiff** | : | **CIVIL ACTION** |
| | : | **NO.:** |
| **vs.** | : | |
| | | |
| **YORK RISK SERVICES GROUP** | : | |
| | : | **PLAINTIFF REQUESTS A TRIAL** |
| | : | **BY JURY** |
| | : | |
| **Defendant** | : | |
| | : | |

**COMPLAINT**

    I.      **PRELIMINARY STATEMENT:**

    1. This is an action for an award of damages, declaratory and injunctive relief, attorneys' fees, and other relief on behalf of Plaintiff, Lisa Nintze. Plaintiff was an employee of Defendant, York Risk Services Group, who has been harmed by the Defendant's discriminatory and retaliatory employment practices.

    2. This action arises under the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA").

1

**II.    JURISDICTION AND VENUE**

3. The jurisdiction of this Court is invoked, and venue is proper in this district, pursuant to 28 U.S.C. § 1391 as Plaintiff's claims are substantively based on the ADA and FMLA.

4. The district of New Jersey has jurisdiction over this matter because it has general jurisdiction over York Risk Management Group, which is headquartered in the District of New Jersey.

**III.   PARTIES**

5. The Plaintiff herein is Lisa Nintze, former employee of the Defendant.

6. The Defendant herein is York Risk Management Group.

**IV.    ADDITIONAL UNDERLYING FACTS**

7. The Defendant, upon information and belief, employed 50 or more persons when the unlawful conduct alleged in this Complaint occurred.

8. Defendant employed Plaintiff for approximately three and a half years.

9. At all times relevant hereto, Defendant was acting through its agents, servants, and employees, who were acting within the scope of their authority, course of their employment, and under the direct control of Defendant.

10. At all times material herein, Defendant is and has been a "person" and "employer" as defined under the ADA and is accordingly subject to the provisions of the Act.

**V.    UNDERLYING FACTS**

11. Paragraphs 1 through 10 are incorporated by reference, as if set forth at length.

12. Plaintiff alleges that prior to and continuing until September 1, 2018, Defendants, through its agents, servants, and employees, subjected her to discrimination and retaliation violative of the

ADA, the FMLA, and accordingly subject to the provisions of each Act.  The facts in support of these allegations include, but are not limited to the following:

13. Plaintiff alleges that Defendant, through its agents, servants, and employees, failed to engage in the interactive process required to provide a reasonable accommodation for her disability. Defendant discriminated against the Plaintiff because of her disabilities and retaliated against her for seeking reasonable accommodations.

14.  In addition, Plaintiff alleges that Defendant interfered with her use of FMLA by not informing her of her leave rights, and alleges that  Defendant retaliated against her by terminating her employment for previously taking an FMLA leave and needing a subsequent leave.

15. Defendant employed Plaintiff for approximately three and a half years.

16. During her employment with Defendant, Plaintiff performed her job functions in a dutiful and competent matter and at all times maintained at least a satisfactory performance level.

17. In or around mid-February 2018, Plaintiff underwent surgery to remove a cancerous tumor from her lung.

18. Plaintiff missed approximately four days of work and returned without restrictions.

19. Subsequently, Plaintiff's doctor called her and advised her she needed to take time off of work.

20. Plaintiff told Defendant that she needed a week off, and she took the leave.

21. Defendant was aware that Plaintiff needed the time off because of her cancer diagnosis.

22. Plaintiff's cancer interfered with one or more major life activities, qualifying her as disabled.

23. In or around March 2019, Plaintiff was free to work without restrictions.

24. However, Defendant refused to allow Plaintiff to come back to work.

25. Defendant informed Plaintiff that one of her supervisors had put her out on a medical leave of absence.

26. Thus, Plaintiff returned to work in or around June of 2018.

27. Plaintiff was assigned to be a "floater" and assist the other claims adjusters.

28. Plaintiff performed this job well.

29. In or around August of 2018, Plaintiff was put on the most difficult and burdensome desk in the office.

30. Plaintiff again excelled there.

31. On or around December 20, 2018, Plaintiff slipped and fell at work, hurting her shoulder and wrist.

32. These injuries interfered with major life activities and qualified as an additional disability under the ADA.

33. The injury did not put Plaintiff out of work, and she was able to return to work immediately on a light duty restriction.

34. Once again, Plaintiff performed her job well.

35. However, in April of 2019, Plaintiff learned she needed additional cancer treatment.

36. Plaintiff told her supervisor she would need the reasonable accommodation of a leave of absence to treat her illness.

37. After this diagnosis, Plaintiff's supervisor put her on a performance improvement plan.

38. This performance improvement plan was unwarranted.

39. Additionally, it required Plaintiff drive to the corporate office every day, giving her a five to six-hour commute when she was treating for cancer and trying to recover from her arm injury.

40. On or about July 24, 2019, Plaintiff requested a reasonable accommodation of time off of work to have a colonoscopy remove three cancerous tumors.

41. Plaintiff's supervisors were aware this request was related to Plaintiff's disability.

42. On or about July 26, 2019, only two days after informing her employer that she would need to take time off to treat her disability, Plaintiff was terminated.

43. Plaintiff was told she was fired because she failed the audit on her file.

44. This was not accurate.

45. Additionally, even if it was accurate, several other employees had failed a prior audit, and were not disciplined let alone fired.

## COUNT I

## DISCRIMINATION AND RETALIATION UNDER AMERICANS WITH DISABILITIES ACT

46. Paragraphs 1-36 are incorporated herein as if set forth at length.

47. Plaintiff qualified as disabled under the Americans with Disabilities Act, both because of her cancer and because of her wrist/arm injury. Both medical issues impacted major life activities.

48. Plaintiff requested a reasonable accommodation of brief leaves of absences in order to treat her medical issues / disabilities.

49. However, on or about July 26, 2019, Plaintiff was terminated only days after requesting a reasonable accommodation for leave of absence.

50. Plaintiff was told she was terminated because of a failed audit, but that was not the real cause of her termination.

51. The real reason(s) for Plaintiff's termination was because of her disability, her perceived disability, and her request for a reasonable accommodation.

52. The reason proffered for Plaintiff's termination was simply pretext.

53. In the alternative, even if the concerns raised about the audit were authentic, Plaintiff was terminated due to a mixed motive of non-discriminatory reasons and discriminatory reasons.

54. Defendant, its upper level managers, and supervisors all violated the ADA by terminating the Plaintiff.

## COUNT II

### INTERFERENCE AND RETALIATION UNDER THE FAMILY MEDICAL LEAVE ACT

55. Plaintiff repeats all of the facts and all of the paragraphs numbered 1 through 43 as if stated in their entirety herein.

56. Plaintiff was entitled to FMLA leave.

57. Plaintiff took a brief period of leave to treat her cancer.

58. However, Plaintiff needed more leave and intermittent leave in order to treat her medical issues.

59. Plaintiff's rights under the FMLA were not adequately explained to her and she was not told about the amount of leave that she had.

60. Plaintiff was left in the dark about her rights to leave as an attempt to interfere with those rights.

61. In any event, Plaintiff needed to take a brief period of leave to have cancerous tumors removed in July of 2019.

62. Only days into the leave, Plaintiff was terminated.

63. Plaintiff was terminated in retaliation for exercising her rights under the FMLA.

64. Defendant, its upper level managers, and supervisors violated the FMLA by terminating the Plaintiff.

## PRAYER FOR RELIEF

65. Plaintiff incorporates paragraphs 1 through 55 as if set forth at length.

**WHEREFORE**, Plaintiff requests that this court enter judgment in his favor against the Defendant, and order that:

A. Defendant compensate Plaintiff with back pay, at a rate of pay and other benefits and emoluments of employment to which he would have been entitled had he not been subjected to unlawful discrimination based on his disability.

B. Defendant compensate Plaintiff with an award of front pay, if appropriate.

C. Defendant pay to Plaintiff punitive damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses as allowable.

D. Defendant pay to Plaintiff pre and post judgment interest, the costs of suit and attorney and expert witness fees as allowed by law.

E. Defendant shall eliminate all unlawful discriminatory practices as well as remedy the discriminatory effect of past practices and procedures.

F. The Court shall award such other relief as if deemed just and proper, in law and/or equity, including injunctive relief if the Honorable Court deems said relief appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted;

By. /s/ Mark R. Natale Esq.

Mark R. Natale, Esq.